Good morning, Your Honor. Robert Chifre, may it please the Court from Sullivan and Cromwell, I'd like to reserve three minutes for rebuttal. Okay, keep your eye on the clock and we'll try to help you. This is a 1292 appeal in a securities fraud case by a sophisticated institutional investor who brought Volkswagen bonds in a private placement. This Court should reverse for three reasons. One, the narrow Ute presumption, which was a presumption that was adopted by the Supreme Court in 1972, does not apply to claims over misleadingly incomplete, so-called mixed or half-truth claims. Number two, the Ute presumption is not available here because the defendants do not owe any fiduciary duty or similar duty to the plaintiffs. And the third reason is the plaintiff, there's no evidence, read the offering memorandum, and that is dispositive also. Now, the law in this—since Basic, the Ninth Circuit has never affirmed the application of Ute in a so-called mixed case involving a misrepresentation that— Wait a minute, you're right about that, but doesn't Judge Breyer treat this as a non-mixed case? As I understand his ruling, he's basically saying, well, we don't know whether they even looked at the offering memorandum, they bought the same day that it came out, and they were relying upon the insiders at Volkswagen AG. This is a pure omissions case from his perspective. Why is that wrong? It's not, Your Honor. On the face of the complaint, if Your Honor would—pages E3-72 to 82, there are 10 pages of express alleged misstatements. The three categories of alleged misstatements in this case are that Volkswagen misled with respect to its R&D priorities because it did not disclose the existence of a defeat device in certain of its vehicles. Two, it misled with respect to its environmental regulations, which is described by not disclosing that it was in violation of certain environmental regulations. Number three, that its sales, income, and profits were misstated. Now, this court in the Binder case, which is a 1990 case, addressed exactly this situation. In that case, a beverage company created an overly optimistic picture of its products and its profits and did not disclose a defect in the key beverage that drove the whole company. The Ninth Circuit looked at the complaint because this is a case— Judge Breyer basically said that these things which are affirmative statements are really just things that are misleading because of the omission, that everything relates back to the omission. Isn't that what he said or something like that? Yes, but again, and I have the highest regard for Judge Breyer, that was error. And there are cases literally from the Second Circuit, the Third Circuit, the Fourth Circuit, the Fifth Circuit, the Eighth Circuit, the Tenth Circuit, the Eleventh Circuit, and the Deceased Circuit, as well as this court, which analyzed claims under 10b-5-2, which is the misstatement prong of 10b. And you look at the statements because every statement has an omission when it's alleged to be fraudulent or false. So, again, looking at the case of Binder, the court said, well, what was the— With respect to what Judge Breyer said, though, if I understood it correctly, he was saying that those things you referred to were, in fact, true, but they became misleading because of the omission. It ties back to the omission. Isn't that what Judge Breyer said? Yes, Your Honor. Yes, but what Judge Breyer did was— and that was error under settled law since, you know, the last 45 years. The Ute presumption does not apply in the case of a positive affirmative misstatement, and the claim is that the statements were false because they did not disclose the existence of the fact that there was a defeat device. Every single case, an accounting fraud case, claim about, you know, a defective product, is a case that is both an omission case and a misrepresentation case. And courts have uniformly held that it's a mixed case. With respect, what I understood Judge Breyer to say is that these statements that you referred to in the R-72 through 82 and so on were independently true, but everything tied back to the omission. It was because of the omission that there was any issue there, so it all funnels back to the omission. He treated it basically as a pure omissions case rather than a mixed case. I know you disagree with that, but that's what he said, is it not? But, Your Honor, in every single case, including the Binder case from this court, the Poulos case from this court, there is a statement that is made, and then the claim is that the statement was false because of the omitted fact. It was misleading. For example, in the Second Circuit case, Wagoner, which Judge Breyer correctly relied on in his second decision, you had the situation where a bank promised that a certain trading platform would be safe for investors, and, in fact, it wasn't safe for investors. That's similar to what was going on here, where the claim is that Volkswagen said it was doing a lot of R&D with respect to omissions, but didn't disclose that the fact the company was cheating on omissions. Similarly, that it was governed by environmental laws, but it was cheating on environmental laws. That's a mixed case, and the law is quite clear across the country. In such a case, you don't look and say, well, how big was the alleged misstatement? Well, here, in fact, the bonds only went down by less than 2%, and this plaintiff is only alleging $66,000 in damages. But beyond all of that, the key point is that since 1975, which the case that Judge Breyer relied upon is a case called Blackie, which was the precursor of the Basic versus Levinson presumption, there's been 45 years of law, and the Supreme Court has made it quite clear that there are cases under Basic, and there are cases under Ute. And cases under Basic cover all the misstatement cases, and in this case, which is brought expressly by the complaint, is a 10b-5b claim as a misstatement claim. It's not brought as an A or C manipulation or fraudulent scheme case, and it couldn't be because there's no fiduciary duty that a seller of bonds owes to someone who buys bonds. It's a credit relationship. It's not an equity relationship. And, in fact, what the other side does is it cites this Blackie case, which is a case that is the precursor to the Basic fraud-on-the-market presumption, and says, well, that's an open-ended, you know, anytime there's an omission, we don't have to prove reliance. That's not what the Supreme Court held in Basic. It's not what this court held in Binder. And the other side cites a case called Little. Little is a pre-Basic insider trading case. In that case, unlike here, there was no allegation of a representation at all to the purchases of the bonds. In current securities laws in the United States, Basic is the governing presumption that applies when you have a case about misstatements that are being made to investors, and that includes a situation, like is alleged here, where there was an omission that made the statement misleading. And in these mixed cases, again, going back to Binder and all, and there's another case, Laritz, which is a case from the Central District of California, almost directly on point, where the claim was the company disclosed its environmental risk factors, but that statement was misleading because it didn't disclose that it was violating the environmental laws. The court analyzed that case and said, it does not apply because it's a case involving a misrepresentation that is because of the fact that there's omitted facts, exactly this situation. The reason for the Basic presumption was because, you know, in that case, it involved Native Americans who had entrusted to a market maker in securities the sale of those securities. And unbeknownst to the Native Americans, the market maker who owed a duty and had promised that they would, you know, run a fair process was not doing that. And so, it was an omission, but there was no misrepresentation one could rely upon. Here, there's an offering memorandum, which the plaintiff, you know, has to rely upon to bring a 10B case. And in cases where the court has relied on you, it's been because there was no such offering memorandum, and you couldn't prove that there was a misstatement because it was just an omission, you didn't have anything. Here, the plaintiff, in its complaint, for 10 pages, went on and on about the misstatements, and all of those misstatements are based, again, on the omitted facts. So, what the plaintiff wants to have this court do is ignore the basic structure of the securities laws since the Basic v. Levinson case, which is, again, misstatement cases are governed by Basic. Cases involving Sections A and C of 10B are governed by Ute. And in the case of Ute, you need a duty. And in this case, there was no duty. The premise of Ute is that there must be some sort of a relationship between the plaintiff and the defendant that required the defendant to disclose the omitted facts. Counsel, can you clarify for me? I thought that Judge Breyer found that there was insider trading by Volkswagen company officials, and that they owed a duty to the buyers of the Volkswagen. In fact, he found the opposite. No, he found the opposite, Your Honor. He found that there was no such duty at pages ER30-35. In fact, that is even before the court. That was in the third decision we had. The plaintiff, in trying to amend their complaint, claimed that there was insider trading, and Judge Breyer rejected that argument. And again, I believe it's at page ER30-35. And that's because these are bonds, not stock. And in the case of the sale of a bond, you're dealing with your creditor, and that's an arm's-length transaction by definition. And no court has ever held that there's insider trading in connection with the sale of bonds. And Judge Breyer did not as well. The plaintiff now asserts that in this case. He never cross-appealed, so it's not properly before the court. But the clear law is that that's not a permissible argument. In addition, the absence of a duty here, a fiduciary similar duty, that's been adopted by the Second Circuit, the Third Circuit, the Fifth Circuit, the Eighth Circuit, and the Eleventh Circuit, all holding that to invoke you need some sort of a duty to disclose, which someone who is selling bonds does not have. What happened here, Your Honor, again, we went through literally four different motion to dismiss, and then the summary judgment motion at the end before Judge Breyer. And in the second decision, he got it right. He understood that when you had a case that's a case involving a misstatement, and the misstatement is alleged to be misleading because it omits facts, as the Second Circuit held in Wagoner, that's a case that is governed by BASIC. And BASIC doesn't apply here because this is a case involving a private placement of securities. It's not a situation where you have an efficient market such that the information about the stock is embedded in the stock price. This is a case where these plaintiffs bought these bonds from two investment banks, not even directly from Volkswagen. So BASIC doesn't apply, and you doesn't apply, and this is not a case where we think that you should apply, and so that this Court should reverse, and I'll reserve the rest of my time. Very well. Let's see. So, Mr. — I want to say this, correct? It's you for us, is that correct? Yeah, I'm Mr. Dreyfuss, yes. Oh, I'm sorry, I apologize. Mr. Berg, I apologize. Your Honors, if it please the Court, there are certainly and rightfully more cases denying application of the affiliated presumption than there are cases applying the presumption. And there aren't many of either, with only four in this Court, going back to Blackie and Little, which Judge Wallace was on the panel for. But defendants confuse the results of those cases with the rule of law that is applied in those cases because the law and the analytical framework across the circuit is remarkably consistent when weighing whether a case alleges primarily omissions or false statements. The question is one of causation, and whether a plaintiff relied on a false statement that caused him or her to act or an omission of fact that would have changed how he or she acted. And the answer creates two different standards for proving reliance, both with respect to proving direct reliance and the presumption framework of each. Let me ask you this, Counsel. You heard opposing counsel make the comment that, in fact, the District Judge here found there was no fiduciary duty owed by Volkswagen or Volkswagen insiders to the purchasers of these bonds. Do you agree with that? I'm sorry, it was your question whether or not I agree there was a fiduciary duty? No, whether Judge Breyer so found that there was no fiduciary duty. Well, correct, but he did it in a different context. Plaintiffs were moving for leave to amend their complaint in order to add a Section 20 Big A claim for insider trading, believing that the Section 10b claimed alleged already encompassed insider trading under Rule 10b-5a and c. So, in this case, though, do you agree that if there is no fiduciary duty by anybody here, then your claim bails? I strongly disagree with that. Okay, and why is that? Well, I think that there's a duty that arises under Rule 10b-5b, which states that once you start to make a statement, you have to speak completely. You cannot omit facts that are necessary to make the statements made not misleading, and it's a two-step process. First, the court is to analyze whether or not the case alleges primarily misstatements or primarily omissions, and then the question becomes, was there a disclosure obligation? And if you look at PARACOR, which is the case that defendants rely on to say that there could be a fiduciary duty, there are actually a number of factors that could cause a disclosure obligation, including agency or special relationship or past practice. And that cites the Chiarello, which does say insider trading is one of those factors that could create a disclosure obligation. But all of those cases involve pure silence and not Rule 10b-5b, which is announced and affirmed in this circuit in several different cases in many different contexts other than affiliated youth. I think those are— As you know, this case has been going on for a long time and a lot of complex facts. Let me just ask you this. As I understand Judge Breyer's construction of the facts here, this is primarily an omission case, that the affirmative statements that were made were probably true except for the omission. Do you agree with that? I agree. Well, he didn't say probably. He said they were true. Okay. All right. All right. So at that point, then, do you agree that if there is no fiduciary duty and you're purchasing bonds, that that's fatal to your case? I don't. Okay. And why? Because of the Rule 10b-5b, which says that you cannot make a statement that becomes misleading based on omission of fact. Now, in his opening, Mr. Gifford talked about how the omission of fact can make a statement false. Well, that's different than being misleading. And what you'll see in all the cases, including Wagner and those cited, the analysis is whether or not there were false statements and omissions, not misleading statements because there were omissions of fact that were relied upon. And I think it's a question of causation. Was there something false that made an investor buy the stock versus was there an omission of fact that would have changed how that investor acted? Now, these statements that are referenced were statements about how Volkswagen is committed to research and development and how they're trying to be environmentally sound and conscious. And those weren't material statements in themselves that would create an investor to go out and invest in Volkswagen bonds. However, the omitted facts about the use of the defeat device was something that would have changed. And that's what we see when the disclosure is made. We see an investment advisor immediately find out about this massive emissions fraud, start to do analysis on what the impact would be on these bonds, and made the decision to sell the bonds at a loss as a result of these omitted facts. It's an indication that if they knew the omitted facts and were willing to sell them at a loss, they certainly wouldn't have bought them at the same price. And that's why Judge Breyer said the first time that the heart of this case is an omission, and that's why he said it correctly again the third time. Now, what happened in the middle was Wagner came out in the middle of briefing, and Mr. Giffords, very clever, made a very good argument as to what the policy should be, that anytime there is a statement that could be relied on, that's the standard. But that goes directly against what Affiliated Youth says, which says it would primarily be about omissions. It would cabin the use of the presumption in a way that no court has found. And I take you back to Blackie and to Little, which were cases that are the most analogous to this case, where you had financial statements, and you had, in Little, you had an offering for subordinated notes with no fiduciary duty. And in Blackie, you had false financial statements in SEC filings and press releases with no fiduciary duty. So if a fiduciary duty is now required, what you're saying is Blackie and Little were decided incorrectly. And then you look at Binder, which is the case, the first case in the Ninth Circuit, which says that you might have mixed cases, which is a case that alleges both misrepresentations and omissions. But in Binder, there was no fiduciary duty, and yet the analysis was made as to whether or not it was primarily about omissions or primarily about misrepresentations. The same thing happens in Paulus versus Caesar, which is in the Ninth Circuit. Well, if this is a mixed case, then what happens to the youth presumption? Excuse me? If this is a mixed case, where you've got affirmative misrepresentation and omission, what happens to the youth presumption? Every single circuit to decide this issue, including the cases that decide that the affiliated youth presumption did not apply, says that the district court must analyze the case to determine if the case is primarily about the misrepresentations or primarily about the omission. This is the causation issue that I raised before. And in those cases where the affiliated youth presumption was not applied, every one of those cases had affirmatively false statements that the plaintiff looked at and were the primary focus of the complaint. In this case, there are no affirmatively false statements that caused any investor to purchase the bonds. They were all true statements. So if you find that it's a mixed case simply because the duty arises being attached to the statements, you have to ask yourself, or the district court is supposed to ask itself, is this case saying that these true statements were the reason why an investor would buy the bonds, or is it really about the omitted facts of this massive emissions fraud, which has led to settlements and fines over $25 billion already, that would have changed the behavior? And I think when you look at it from a causation standpoint, and you look at it from the actual behavior of the plaintiff in this case, that when they found out about the facts, the omitted facts about the emissions scandal, they sold at a loss. And I don't think there's a court that would find, and it's actually mentioned by the Supreme Court in Basic, that nobody wants to play in a rig game. Nobody's buying securities for the loss. That's not their intent. Let me ask you this then. Where, as your opposing counsel pointed out, these bonds were bought from, I gather, bond traders, and they were bonds, not stocks. Where's the fiduciary duty in this mix? Who had the fiduciary duty to the bond buyers, if anyone? If you're talking about under claims that arise— Under any theory. Who had a fiduciary duty, if anyone? I would say the insider selling the bonds had the fiduciary duty, and I would point you to the little case, again, with Judge— And what insiders are you referring to? The insider is the Volkswagen entity that sold the bonds. That's from the Spotrunner case in the 9th Circuit. So they didn't sell the bond to these bondholders. It wasn't sold to an interim trader, if you will? The bonds were sold, placed through underwriters, correct. Okay, so who has the duty? Is it the underwriters, or is it Volkswagen? I think in Spotrunner, and if you look at Stakinski in the 2nd Circuit, there's no distinction made between the Volkswagen entity that put the bonds out at issue and the underwriters that placed the bonds with the investor. But who has the duty? Do the underwriters have a fiduciary duty? If the underwriters knew of the undisclosed facts, then I think they would. Okay, what if they didn't? Does Volkswagen have the duty? I think they do, and then the underwriters are the agents of Volkswagen that are putting the bonds into the placement. Stakinski in the 2nd Circuit referenced in our brief, and Spotrunner in this circuit, I think, support that. And if you look at Little, they were offering subordinated notes in the same way. Okay, DW puts the bonds out there, but they don't make any statements. Then somebody's making some statements, and you said because they start to speak, they have to make a total statement. So somebody started to speak and had an omission. So who was that who started to speak but had an omission? The offering documents do come from Volkswagen through a Volkswagen entity. Okay, so the offering documents came from Volkswagen, so Volkswagen spoke. Correct. Okay. Is there any evidence that the bond buyers, in this case, not the underwriters, but the plaintiffs here, actually saw the offering circuit or offering memorandum? Well, the evidence that you have presented by plaintiffs is that it was the ordinary practices of portfolio managers who owed a duty to the plaintiffs to read the offering memorandum and to research the offering before they purchase. There is no evidence presented by defendants that the offering memorandum was not read, and it is their burden of production and persuasion to say that it was. Now, you do see reference in the supplemental briefing to Rule 8037, which is a hearsay exception, talking about the absence of a business record, and that there was no record that the offering memorandum was read. But in order for that to apply, that has to be a record that was ordinarily kept, and for that purpose, and there's no evidence of that. There's no—and the testimony on the deposition was that the portfolio managers had access to a Bloomberg terminal and could access the offering memorandum online and review it anytime they wanted, and it's not likely that it would have been printed because of the volume. Now, even beyond that, there actually is— there actually was a record of the offering memorandum in the research file because there was three bound copies of the offering memorandum. Now, defendants say that those bound copies were delivered after the offering. However, there's no evidence that those bound copies in the research file didn't replace drafts that were previously printed, and it would not work— and there's no evidence that it would be custom for the portfolio managers to keep every single draft of the offering memorandum in the file. When you have the final bound version, that would be a record of the offering memorandum, and that's on top of the testimony that they— that the portfolio managers had access to the offering memorandum through the Bloomberg terminal. Does it make any difference that the subject of the purchase was— were bonds as opposed to stocks? I don't think it does. If you look at the Second Circuit's—the Stankinsky that I mentioned, there's no difference there. If you look at Little, it's subordinated notes, and Little applies the affiliated U presumption based on the same omissions in financial—in the offering document, and Blackie has the same financial records. Same facts. Time's about up. Do you want to wrap it up? I'm finished, Your Honor, unless you have any further questions. Do either of my colleagues have additional questions for Mr. Berg? Yeah, I do. Let me take your last seven seconds. Tell me how—if your analysis is correct, how does affiliated U fit in, and is it necessary? Affiliated U fits in because there is a speculative negative that's hard to prove of what one would have done had they known facts they did not know. That's an omission. And in order to prove direct reliance on omission, which is different than direct reliance on a statement, you have to show that you would have acted differently had you known the omitted facts. So I don't—I think that's how it fits in. I don't think it's necessary because we presented alternative. We presented facts of direct reliance. We presented fraud on the regulatory process, which is still good law under Arthur Young. We would hope that the court addresses that since there seems to be some confusion in the district courts. And we also allege a fraud on the market presumption, both for bonds bought in the secondary market and for bonds bought in the offering, because market efficiency, which is the requirement for that, has not been defined in the— has not been defined in this circuit. You don't think you need the presumption? I think there's alternative basis that show reliance on which summary judgment could have been denied, but I think presumption is appropriate and the best way for plaintiffs to show reliance going forward in the case as we move for class certification. So I'd like to— Based upon your analysis, what about the area where there's some record indicating that you have to—that in order to be a buyer, you have to rely upon only what Volkswagen says and not other items? How does that fit in your development? I think it's really half the story because the offering memorandum also says that each purchaser must make their independent evaluation and assessment of Volkswagen, right? You just can't rely on a statement that's made outside of the offering document. But the fact that they mention these 10 pages of facts about environmental research and development, that's what gave rise to the duty for the omitted facts to actually have been in the offering document. Okay. Thank you very much. Sorry for running you over, but I appreciate your comment. Thank you, Your Honor. Thank you very much. Mr. Gioffre has some rebuttal time. Yes. Your Honor, I'd like to first start and correct a misstatement that the plaintiff made. He said that this was purely an omissions case. Well, if Your Honors will look at page 373, actually 372 to 382 of the ER, in the complaint itself, the plaintiff at paragraph 227 said, quote, all three of the offering memorandum contain substantially identical false and misleading statements, and then goes on for paragraphs, identifying the false and misleading statements. So that's what the plaintiff's own complaint says. In addition, the plaintiff said that, well, Judge Breyer analyzed the case only as an omissions case. Not true. In fact, at page 28 of plaintiff's own brief in this case, in this court, plaintiff says, quote, the district court erroneously analyzed this as a mixed case, and then goes on to say, quote, this court should correct that error. So Judge Breyer did view this as a mixed case, but he thought it was a mixed case because there was a big fraud that was hidden, and the law is pretty clear that that's not the way you analyze these cases. I think a point that I think Judge Wallace was hitting on, which is that the interpretation of affiliated youth that's being proposed by plaintiffs here would swallow ASIC, which is the primary presumption that parties rely on plaintiffs in cases involving misstatements, because every case would become a youth case. But what's happened since youth, there's not been one case that this plaintiff can cite since the Blackie case. In the Blackie case, the court relied on A and C, which was the parts of this that don't deal with misstatements. Ever applying youth as plaintiff would like to, yet we cite cases from multiple circuit courts as well as district courts in this circuit where courts have said youth does not apply to a mixed case such as this one, like the Blinder case, where there was a product defect. This is a case, again, under 10B5B, misstatements. And the extent that the plaintiff relies upon Blackie and Blinder, those are cases that are, excuse me, Blackie, that's a 45-year-old case that was the precursor to BASIC. And the Supreme Court, including Justice Ginsburg, Justice White, has viewed that as a precursor to the fraud on the market theory, not as a standalone revision of the youth theory to become an amorphous presumption. And so there's not one case they can cite that supports them. On this question, and I think this was a point that Judge Wallace made, which is correct, in Friedman v. Solomon, which is a 1994 Ninth Circuit case, the court held that youth could not apply because in that case, there was no evidence that the plaintiff had reviewed the prospectus. And as Judge Wallace correctly pointed out, in this case, the prospectus said all the information that you can rely upon is in this prospectus, that's the deal that you've entered into here. We took the deposition of the investment advisor. The investment advisor had no evidence whatsoever that anyone at the investment advisor had reviewed the offering memorandum before the purchase of the securities. The only evidence that was in the record was literally a bound version of the offering memorandum that was provided after the offering was done and after the stock price had been done, and that's at ER 151. In fact, the investment advisor said at ER 138 that they had no obligation to review the offering memorandum and there's no evidence that they did, and that independently is another ground for reversal here. The plaintiff raised the Arthur Young case. That's literally a 1977 case that's never been applied by this court since. It stands for the proposition that a fraud on a regulator might be a basis for some sort of integrity of the regulatory process presumption. These were not offering memorandums that were ever reviewed by the SEC, so they were unregistered offering memorandums. So, Your Honors, we think this court should reverse, and it's for the three grounds we've articulated. Number one, the narrow UTE presumption doesn't apply to a mixed case, C binder, this court's decision. Number two, there's no fiduciary or similar duty. Plaintiff conceded that that's what Judge Breyer found here, and you need that. That's what happened in the UTE case. And the third reason for reversal is because there's no evidence whatsoever that the investment advisor reviewed the offering memorandum, and there's certainly no evidence that the plaintiff reviewed the offering memorandum. Judge Breyer repeatedly asked the plaintiff for such evidence and the plaintiff never had such evidence. So, on all of those grounds, this court should reverse, and, Your Honor, the other side is literally advocating a position that would put the Ninth Circuit, contrary to multiple circuits, on a clear area of federal securities laws. Thank you very much. Thank you. The Ninth Circuit, of course, never wants to be different than anybody else. Thank you both for your argument. Thank you, Your Honor. We appreciate it. The argument is submitted, and when our tech people have got this set up, we're ready to hear on the last case of the day, Zoller v. GCA Advisors.
judges: Wallace, M. Smith, Restani